**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

```
*******************************************
In re:  Robert Paul Harvey              *
        Lori Anne Harvey                *
                                        *
                                        *  Chapter  7
                                        *  Case No.  07-20248
                                        *
        Debtor                          *
*******************************************
                                        *
 Robert Paul Harvey                     *
                                        *
                                        *  Adversary No.  07-2057
        Plaintiff                       *
                                        *
v.                                      *
                                        *
United Technologies                     *
                                        *
                                        *
                                        *
        Defendant                       *
*******************************************
```

**Memorandum of Decision**

In response to chapter 7 Debtor Robert Paul Harvey's complaint seeking damages for violations of the Bankruptcy Code's[1] automatic stay, Defendant United Technologies (UT) has moved for judgment on the pleadings. However, UT's assertion that, by dint of § 342, Harvey cannot prevail or, alternatively, that he cannot obtain a damages award pursuant to § 363(k),

---

[1] References to the "Bankruptcy Code" or the "Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq. Unless otherwise indicated, references to statutory sections are to sections of the Code.

does not carry the day.[2]

## Introduction

## Judgment on the Pleadings Standard

The standard for evaluating a motion seeking judgment on the pleadings is essentially the same as that for evaluating a motion seeking dismissal for failure to state a claim for relief. Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 22 (1st Cir. 2007).[3] I must accept all of Harvey's well-pleaded factual averments as true, and must draw all reasonable inferences in his favor. Id. "Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). I may (indeed, must) supplement the facts set forth in the pleadings by considering documents fairly incorporated in them, and may also consider facts which may properly be judicially noticed. Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007). Documents central to Harvey's claims, documents referred to in the complaint, and as to which there is no authenticity dispute are properly considered in deciding this Rule 12(c) motion. Id.; Beddall v. State Stree Bank and Trust Co., 137 F.3d 12, 17

---

[2] This memorandum sets forth my conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

[3] Fed. R. Bankr. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6), governs dismissal for failure to state a claim. Fed. R. Bankr. P. 7012(b) also incorporates Fed. R. Civ. P. 12(c), which governs judgment on the pleadings. The rules' application is constant in bankruptcy and nonbankruptcy contexts. See, e.g., Colonial Mortgage Bankers Corp. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003)("The jurisprudence of Rule 12(b)(6) is applicable to motions to dismiss in bankruptcy cases.")

(1st Cir. 1998).[4]

## Harvey's Complaint

The complaint straightforwardly alleges automatic stay violations. Harvey filed a voluntary chapter 7 petition on April 4, 2007. His schedules listed UT as an unsecured creditor, with its address at "36794 Treasury Center, Chicago, IL 60694-6700." UT's billing notices consistently set out that address as the place for Harvey to remit payments. The billing notices included the following language:

> Please include your account number on your check or money order. Do not include any additional correspondence with your bill. Any correspondence returned with your bill will be discarded.[5]

Harvey possessed no other address where he could direct correspondence or notices to United Technologies.

The clerk mailed notice of the bankruptcy filing to UT at the same address on April 5, 2007.

UT sent Harvey a monthly billing statement on April 10, 2007. On April 24, 2007,

---

[4] The Supreme Court recently restated the test for dismissal under Fed. R. Civ. P. 12(b)(6). In <u>Bell Atlantic Corp. v. Twombly</u>, __U.S.__, 127 S.Ct. 1955 (2007), the Court declared that, to survive a motion to dismiss, a complaint must aver "enough facts to state a claim to relief that is <u>plausible</u> on its face." <u>Id.</u> at 1974 (emphasis supplied). The extent to which this restatement of the survival standard for federal complaints effectively raised the bar for complaining parties is open to debate. For today, however, it is of little moment. <u>Bell Atlantic</u> addressed a complaint that insufficiently alleged facts from which the existence of an agreement contrary to antitrust laws could be inferred. <u>Id.</u> at 1973. Here, UT's motion is grounded not on an asserted dearth in Harvey's factual allegations. It contends that the facts alleged are legally insufficient, in effect that they preclude recovery.

[5] Complaint Exhibits C, E, and F.

Harvey's counsel wrote to UT (at the scheduled address), warning it that its billing violated the automatic stay and directing it to refrain from contacting Harvey. He enclosed a copy of the court's notice of filing. On May 10, 2007, UT sent Harvey another bill. On May 22, 2007, counsel again wrote (to the same address), informed UT of the bankruptcy and warned it that further dunning would trigger an adversary action to enforce the stay.[6] On June 10, 2007, UT billed Harvey once again.[7]

### United Technologies' Answer

UT's answer denies the complaint's material allegations and avers it was not properly notified of Harvey's bankruptcy complaint until Harvey's counsel effected service of the adversary complaint on CT Corporation System (CT System), its registered agent for service for the State of Maine, on July 11, 2007.

### Discussion

### The Motion for Judgment on the Pleadings

UT's motion asserts that the detailed notice provisions engrafted on § 342 by 2005's Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)[8] negate Harvey's claim

---

[6] Harvey's counsel chose to enforce the stay via adversary complaint. Fed. R. Bankr. P. 7001. Such initiatives may be undertaken by motion, as well. Fed. R. Bankr. P. 9013, 9014. See, e.g., Rijos v. Vizcaya (In re Rijos), 263 B.R. 382, 391 (B.A.P. 1st Cir. 2001)(debtors' request for sanctions for willful violations of the automatic stay, brought by motions against dual creditors, satisfied the requirements of Fed. R. Bankr. P. 9013 and 7008).

[7] Appended to the complaint are copies of the court-issued notice of Harvey's bankruptcy filing, the post-petition bills referred to, and counsel's letters.

[8] Pub. L. No. 109-8 (2005), effective in cases commenced on or after October 17, 2005.

that notice of his bankruptcy filing, and correspondence from his counsel elaborating on its consequences, were effectively provided it during the time the alleged stay violations occurred. According to UT, bankruptcy-related notices (and related correspondence) were ineffective unless conveyed to CT System, its agent for service of legal process in the State of Maine.[9] It asserts that appointing CT System its registered agent operated to designate it as "a person or an organizational subdivision of [UT] to be responsible for receiving notices under [title 11]" within the meaning of § 342(g), so that bankruptcy notices and related correspondence provided to UT other than through CT System were without effect. At minimum, according to UT, Harvey's noticing deficiencies preclude the possibility of a damages award on account of asserted stay violations.

**Section 342**

Resolving UT's motion requires detailed examination of § 342, much of which is a product of recent-vintage legislation. Insofar as pertinent, it now provides:

> (a) There shall be given such notice as is appropriate, including notice to any holder of a community claim, of an order for relief under this title.
> (b) [Describes notices to be give to debtors before case commencement.]
> (c) (1) If notice is required to be given by the debtor to a creditor under this title, any rule, any applicable law, or any order of the court, such notice shall contain the name, address, and last four digits of the taxpayer identification number of the debtor. If the notice concerns an amendment that adds a creditor to the schedules of assets and liabilities, the debtor shall include the full taxpayer identification number in the notice sent to that creditor, but the debtor shall include only the last 4 digits of the taxpayer identification number in the copy of

---

[9] As a foreign corporation doing business in Maine, UT was required to maintain a "registered office and agent" within the state. Me. Rev. Stat. Ann. tit.13-C, § 1507(1)(2005 & Supp. 2007). Service of legal process on a foreign corporation is effected by serving the registered agent. Me. Rev. Stat. Ann. tit.13-C, § 1510(1)(2005 & Supp. 2007).

the notice filed with the court.

(2)(A) If, within the 90 days before the commencement of a voluntary case, a creditor supplies the debtor in at least 2 communications sent to the debtor with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.

(B) If a creditor would be in violation of applicable nonbankruptcy law by sending any such communication within such 90-day period and if such creditor supplies the debtor in the last 2 communications with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.

(d) [Applies only notices of presumption of abuse under § 707(b).]

(e) (1) In a case under chapter 7 or 13 of this title of a debtor who is an individual, a creditor at any time may both file with the court and serve on the debtor a notice of address to be used to provide notice in such case to such creditor.

(2) Any notice in such case required to be provided to such creditor by the debtor or the court later than 5 days after the court and the debtor receive such creditor's notice of address, shall be provided to such address.

(f)(1) An entity may file with any bankruptcy court a notice of an address to be used by all the bankruptcy courts or by particular bankruptcy courts, as so specified by such entity at the time such notice is filed, to provide notice to such entity in all cases under chapters 7 and 13 pending in the courts with respect to which such notice is filed, in which such entity is a creditor.

(2) In any case filed under chapter 7 or 13, any notice required to be provided by a court with respect to which a notice is filed under paragraph (1), to such entity later than 30 days after the filing of such notice under paragraph (1) shall be provided to such address unless with respect to a particular case a different address is specified in a notice filed and served in accordance with subsection (e).

(3) A notice filed under paragraph (1) may be withdrawn by such entity.

(g)(1) Notice provided to a creditor by the debtor or the court other than in accordance with this section (excluding this subsection) shall not be effective notice until such notice is brought to the attention of such creditor.  If such creditor designates a person or an organizational subdivision of such creditor to be responsible for receiving notices under this title and establishes reasonable procedures so that such notices receivable by such creditor are to be delivered to such person or such subdivision, then a notice provided to such creditor other than

6

    in accordance with this section (excluding this subsection) shall not be considered to have been brought to the attention of such creditor until such notice is received by such person or such subdivision.

        (2) A monetary penalty may not be imposed on a creditor for a violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) or for failure to comply with section 542 or 543 unless the conduct that is the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief.

11 U.S.C. § 342.

UT's statutory argument, though audacious, is wrong-headed. It stands § 342 on its head to gild § 342(g)(1) with undeserved meaning. Here's why: Section 342(g) can only be read sensibly in context with § 342's other subparagraphs. To the extent they pertain, each can be briefly summarized:[10]

### Section 342 (a) - (f)

Section 342(a), which was not amended by BAPCPA, sets the standard for providing notice of the order for relief. It is a general standard: "such notice as is appropriate." But other subsections of § 342 provide ways in which a creditor may specify how notices must be directed to it.

Section 342(c)(1), which predates BAPCPA,[11] applies to notices "required to be given by the debtor to a creditor under this title, any rule, any applicable law, or any order of the court.."

---

[10] Section 342(b) is a general rule requiring that certain information be made available to prospective bankruptcy debtors. Section 342(d) dictates the timing (as opposed to the manner) of notices given by the clerk in instances where a presumption of abuse arises. They do not illuminate UT's § 342(g) argument.

[11] Before addition of additional subsections, this provision was denominated § 342(c).

It prescribes necessary content (taxpayer identification number) for the notice.

Section 342(c)(2) (A) and (B), added by BAPCPA, are narrower in scope, as they address only notices "required by this title [i.e., the Code] to be given by the debtor to such creditor" When a creditor has, in at least two, recent prebankruptcy "communications" provided the debtor with his or her account number and "the address at which such creditor requests to receive correspondence," the debtor must dispatch required notices to that address and the notice must include the account number.

Section 342(e), added by BAPCPA, provides that for any given chapter 7 or chapter 13 case, a creditor may file with the clerk and serve on the debtor an address "to be used to provide notice in such case." Once that address is filed and served, the debtor and the court must use the designated address for notices "required to be provided to such creditor."[12]

Section 342(f), another new provision, empowers any entity to file an address with a bankruptcy court and to specify that, thereafter, that address must be used by "all the bankruptcy courts or by particular bankruptcy courts" in connection with chapter 7 or chapter 13 cases.[13]

Except as they illuminate the operation of § 342(g), these subsections have no impact on this case. Putting aside the clerk's notice of the order for relief, which was dispatched in accordance with § 342(a) and Fed. R. Bankr. P. 2002, counsel's letters to UT, apprising it that a case had been filed and that the stay was in effect, fell outside their ambit. Those letters (which

---

[12] The clerk and the debtor must commence using the creditors' designated address for all notices promulgated "later than 5 days after the court and the debtor receive" the designation. § 342(e)(2).

[13] For all notices promulgated by the court "later than 30 days after the filing of such notice," the designated address must be used. § 342(f).

predated all but one of the alleged stay violations) did not constitute "notices by the Code, rules, court order, or other applicable laws." § 342(c). Moreover, UT does not contend it had provided an address to be used for the case. § 342(e).[14]

### Section 342(g)

With the substance of the preceding subparagraphs in mind, § 342(g)'s function becomes clear. It is a "timing and consequence" provision, not a "to whom notice must be directed" provision. I'll explain.

Section 342(g), also newly-minted, commences with the words: "Notice provided to a creditor by the debtor or the court other than in accordance with this section (excluding this subsection) shall not be effective notice until such notice is brought to the attention of such creditor." Thus, § 342(g) applies when notice has not been effected by a debtor serving a creditor with a Code-required notice at an address provided by the creditor in prebankruptcy communications (§ 342(c)(2)). It applies when, in a chapter 7 or 13 case, the debtor or the court has not served a creditor with a Code-required notice at an address designated for the case (§ 342(e)). It applies in a chapter 7 or 13 case when a bankruptcy court fails to provide notice to an entity at an address that has been filed with a bankruptcy court in accordance with § 342(f).[15] In such instances, a notice is "not effective" (as elaborated on in § 342(g)(2)) until it is "brought

---

[14] See 3 Alan N. Resnick & Henry J. Sommer (eds.), Collier on Bankruptcy (15th ed. rev. 2008) ¶ 342.09 at 342-21(notices given by debtor's counsel informing creditors of bankruptcy and stay early in a case are not governed by § 342).

[15] Happily, for now, we need not address what happens when any one of the myriad conflicts or vagaries with which § 342 is replete must be confronted. See generally Henry E. Hildebrand, III, Getting Noticed: The New Notice Requirements of Section 342,13 Am. Bankr. Inst. L. Rev. 533 (2005).

to the attention" of the creditor.

Section 342(g)(1) provides, in essence, a "delay" mechanism. If a creditor designates a "person[16] or an organizational subdivision of [the] creditor to be responsible for receiving notices under this title [i.e., the Bankruptcy Code]", and establishes "reasonable procedures so that [bankruptcy] notices receivable by [the] creditor are to be delivered" to that person or subdivision, are deemed "unaware" of notices directed to that creditor, other than to the designated person or subdivision, and, therefore, those notices are not deemed to have been brought to the creditor's attention until the designated person or subdivision receives them. In other words, if a creditor has established, in-house or out, someone ("someone" in the broadest sense) who is authorized and empowered to receive (and, presumably, deal effectively with) bankruptcy notices, then delivering the notice to another arm, agent, or employee of that creditor does not establish "effective notice" simultaneously. If the creditor has reasonable procedures to get bankruptcy notices to the arm, agent, or employee empowered to receive them, the creditor receives a temporal reprieve while the notice is transmitted there.[17]

UT argues that appointing CT System its authorized agent for service of process in the State of Maine constitutes its designation as "a person . . . to be responsible for receiving notices under this title" within the meaning of § 342(g)(1). Therefore, its argument goes, it did not effectively receive notice of Harvey's bankruptcy until July 11, 2007, when the complaint in this adversary action was served on CT System.

---

[16]   Section 101(41) defines "person" to include individuals, partnerships and corporations.

[17]   What constitutes a "designation" and what "procedures" are sufficiently "reasonable" and "established" to earn this reprieve will be fodder for litigation.

The argument ignores both the structure of § 342 and the function of § 342(g)(1). Section 342's other subparagraphs dictate how, and to what extent, an entity can inform the "world" (more accurately, the "bankruptcy world') how it chooses to receive certain bankruptcy notices. To say that appointing a registered agent for receipt of service works the same way, ignores - more accurately contradicts - those subsections.

In the usual course, it would be surprising for a foreign corporation's registered agent for service also to be the "go to" entity to assure timely action in response to notices and news of bankruptcy developments.[18] But even if we were to assume that CT System's agency was so substantive and far-reaching, the record is devoid of any indication that UT established "reasonable procedures" to convey such information to it. Indeed, how could UT's position comprehend such a procedure when, by its own admission, the first stip taken with information dispatched to a disfavored address is to "discard" it?

Thus, I reject UT's argument that § 342 operated to render notice it received prior to CT System's July 11, 2007, receipt of the complaint in this action ineffective.

### Appropriate Notice

The question remains whether the complaint effectively alleges that UT received notice of Harvey's bankruptcy prior to July 11, 2007 (when CT System received the complaint), or, more importantly, prior to the alleged automatic stay violations, UT received notice of Harvey's bankruptcy filing. See, e.g., Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir.

---

[18] This is a case in point. Notwithstanding service of the complaint on CT System on July 11, 2007, a lengthy delayed ensued. UT was initially defaulted for failure to timely answer the complaint. Docket Entry No. 5. That default was subsequently lifted by agreement of the parties. Docket Entry No. 15.

1999)("A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation."); <u>Knaus v. Concordia Lumber Co., Inc. (In re Knaus)</u>, 889 F.2d 773, 775 (8th Cir. 1989)("A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition.")

Harvey scheduled an active business address for UT. The clerk sent notice of the bankruptcy filing there. His counsel repeatedly wrote to that address to inform UT of the bankruptcy filing and the consequences of automatic stay violations. Section 342 requires no more, except for § 342(a)'s dictate that notice of the order for relief must be "appropriate."

Scheduling an address at which a creditor conducts its activities, and directing bankruptcy-related communications there would seem eminently reasonable and appropriate. But UT argues it could not be, because it had warned that correspondence directed there would be "discarded." To begin, the argument is at odds with the warning's own words, which say "do not include any additional correspondence *with your bill*" and "[a]ny correspondence returned *with your bill* will be discarded." Even if I were inclined to give legal import to such a unilateral dictate,[19] Harvey did it no violence. None of the notices or correspondence at issue were returned "with [his] bill."[20]

---

[20] Presumably, what UT meant to say was that it did not want correspondence returned with Harvey's *payment* (as opposed to "bill"). It did not even convey that message effectively.

Moreover, UT does not deny it *received* the notices and correspondence informing it of Harvey's bankruptcy before dunning him. Rather it urges that the notices were ineffective because it discarded them in accordance with its own policy. I would not concede that a child who thrust his fingers in his ears and hummed loudly while being admonished had not received the admonition. Neither would I concede UT's contention that it received no notice because it threw it away. "Where a litigant's own internal procedures are the cause of a failure to comply with proper legal procedures, courts generally refuse to grant relief from the consequences of the lack of compliance." In re Biddy, 7 B.R. 50, 52 (Bankr. N.D. Ga. 1980); see also In re King, 290 B.R. 641, 645 (Bankr. C.D. Ill. 2003)(address appearing on proof of claim was appropriate address for notice of confirmation, notwithstanding creditor's assertion it was merely for receipt of disbursements); In re Mauk, 287 B.R. 219, 222 (Bankr. E.D. Mo. 2002)(notices directed to payment address are effective)(citing cases).

Because I conclude that the pleadings effectively assert that UT received notice of Harvey's bankruptcy before the alleged stay violations occurred, it is unnecessary to consider whether § 342(g)'s limitations on monetary recovery operate.

## Conclusion

For the reasons set forth above, United Technologies' motion for judgment on the pleadings is DENIED. A separate order shall enter forthwith.

| | |
|---|---|
| April 23, 2008 | /s/ James B. Haines, Jr. |
| _____ | _____ |
| Date | James B. Haines, Jr. |
| | U.S. Bankruptcy Judge |

13